## Dravo Trust

*William F. Knox* and *Davis C. Burroughs, Jr.*, for accountants.

*James H. Houston, William J. Kenney, George C. Burgwin, 3rd,* and *John E. Perry,* for charitable legatees.

*Stephen E. Nash* and *G. Harold Blaxter,* for settlor's estate.

RAHAUSER, J., October 30, 1953.—This case comes before the court in connection with the audit of the fifth account of Mellon National Bank and Trust Company, Louis A. Mertz and William D. Fritch, successor trustees under a deed of trust of Ralph M. Dravo dated January 15, 1931. The principal question to be determined is whether Ralph M. Dravo executed the deed of trust, wherein he made certain charitable gifts, in compliance with the requirements of the Act of April 26, 1855, P. L. 328, as amended (10 PS §12), which has been construed to require two subscribing witnesses. This in turn raises the question of whether the deed of trust consists of one instrument or of several intruments.

To understand the questions involved it will be necessary to refer briefly to a number of papers executed by Ralph M. Dravo. He executed a deed of trust on January 15, 1931. Section 2 of article second of this deed of trust provided, inter alia, as follows:

*"Section 2.* After the death of the Creator's wife, Jane M. Dravo, the Trustees shall pay the sum of Five Thousand Dollars ($5,000.00) to Creator's nephew, Frank Pettit, if he is then living, and shall distribute one-third (⅓) of all the stock of the Dravo Management Company and one-third (⅓) of all the common stock of the Dravo Corporation then remaining in the hands of the Trustees, not, however, to exceed fifteen per centum (15%) of the value, as determined by the Trustees, of the total Trust Estate then in the hands of the Trustees, to and among those officers and employees of the Dravo Corporation or any of its constituent companies as shall be certified to the Trustees by Ralph M. Dravo and/or Frank R. Dravo in the proportions which they or either of them shall determine and certify. At any time during the lifetime of Jane M. Dravo the list of officers and employees entitled to share hereunder and their respective propor-

tions may be changed at the discretion of Ralph M. Dravo and/or Frank R. Dravo and the Trustees shall be governed by the list of eligible officers and directors certified to the Trustees at the nearest date to the death of Jane M. Dravo. In no event shall the list of eligible officers and employees include the Creator."

Section 8 of article second of the deed of trust further provides:

"All the balance of the Trust Estate shall be distributed by the Trustees to such charities and in such proportions as the Creator shall designate in writing to the Trustees. The latest designation of charities which shall be so certified to the Trustees by the Creator before his death, shall govern the Trustees in making distribution."

The deed of trust was signed by Ralph M. Dravo, but there was only one witness to his signature at the time this paper was executed on January 15, 1931.

Subsequently Ralph M. Dravo wrote a letter, as follows:

"November 24, 1931

"Ralph M. Dravo and Francis R. Dravo,
Trustees under Deed of Trust dated
January 15, 1931 for Ralph M. Dravo.

"Gentlemen:—

Referring to my Trust Agreement dated January 15, 1931, following is the list of charities which I desire to share in the distribution as specified in Article 2, Section eight of said Agreement, together with the proportionate share of each charity:—

Lehigh University, Bethlehem, Pa. . . . . . . . . . . . 40%
St. Stephen's P. E. Church, Sewickley, Pa. . . . . . 20%
St. Barnabas' Free Home, Gibsonia, Pa. . . . . . . . 20%
Valley Hospital, Sewickley, Pa. . . . . . . . . . . . . . 20%

"Yours very truly,

RALPH M. DRAVO
RALPH M. DRAVO"

It will be noted that the signature of Mr. Dravo on this paper was not witnessed.

Several years later Ralph M. Dravo wrote another letter, as follows:

"April 4, 1934.

"Ralph M. Dravo and Louis A. Mertz
Trustees under Deed of Trust dated
January 15, 1931 for Ralph M. Dravo;

"Gentlemen:—

"Referring to my Trust Agreement dated January 15, 1931—the officers and employees who are to participate under Article 2, Sections two, four and eight, are the following, with the respective percentages in this participation:

"J. D. Berg ........ 14%
J. S. Miller ...... 14%
V. B. Edwards .... 14%
Wm. H. Fowler.... 10%
L. A. Mertz .... 7%
A. Davia ........ 8%
C. A. Hill........ 5%
W. A. Bliss....... 6%
Alex. W. Dann.... 10%
E. T. Gott........ 4%
C. B. Jansen...... 4%
Jos. W. Connell... 4%

"This list is made with the understanding that these names and percentages may be changed from time to time by me.

"Yours very truly,

RALPH M. DRAVO
RALPH M. DRAVO

"WITNESSES:
Veronica Rattelsdorfer
Louis A. Mertz          "

It will be noticed that this letter, signed by Ralph M. Dravo, bears the signatures of two witnesses. These witnesses testified at the hearing in the present case; they both said that they saw Ralph M. Dravo sign this paper on April 4, 1934.

On April 4, 1934, Ralph M. Dravo also executed his will. Article II, sec. 3, of the will provides as follows:

"Section 3. Upon the death of my wife, Jane M. Dravo, and my daughter, Elizabeth Dravo Harlow, the Trustees shall convey, transfer, and distribute absolutely to the then surviving issue of Elizabeth Dravo Harlow, in equal shares, such portion of the principal of the Trust Estate as shall be equivalent to the amount by which the value of the principal distributable at such time to such issue by the trustees of the trust estates created by me and by Jane M. Dravo under trust agreements dated January 15, 1931, falls short of the sum of $500,000. If any of the children of my said daughter, Elizabeth Dravo Harlow, at the time of such distribution hereunder, have died leaving children then surviving, such children shall take the share their parent would have taken if then living. The share of any minor child or grandchild shall be retained by the Trustees until such child or grandchild shall arrive at the age of twenty-one years."

Article III, sec. 3, of the will provides as follows:

"Section 3. The Trustees of the Trust Estate, in making division of any portion of the property in their hands and making distribution thereof as occasion may arise so to do under the terms of this will, or in any designation made by me in connection therewith, shall have the right to make distribution to the persons and/or institutions entitled in kind at such valuation on the property and securities so distributed as they, in their reasonable but not arbitrary discretion, shall determine, and shall also, for the purpose of determining the amount, if any, to be paid to the issue of Eliza-

beth Dravo Harlow under the provisions of Section 3 of Article II hereof, have the right to place such value upon the property comprising the principal distributable to such issue by the trustees of the trust estates created by me and by Jane M. Dravo under trust agreements dated January 15, 1931, as they, the said Trustees, shall, in their reasonable but not arbitrary discretion, determine."

The will was signed by Ralph M. Dravo and witnessed by two witnesses, both of whom testified that they saw Mr. Dravo sign this will on April 4, 1934.

The portion of article second, sec. 2, of the deed of trust dated January 15, 1931, heretofore quoted, clearly contemplated that a part of the trust estate was to be distributed to persons not named in the original instrument, but who were to be certified to the trustees "by Ralph M. Dravo and/or Frank R. Dravo . . .". The section further provided that the names and shares of such distributees could be changed at any time during the lifetime of Jane M. Dravo and that the list certified to the trustees at the nearest date to the death of Jane M. Dravo should govern such distribution. The language of this section indicates that settlor did not consider this instrument of January 15, 1931, as complete. He left it in a state where he (or his brother) was to add something to it in the future. The prospective addition was definite as to the subject matter, i.e., the names and proportionate shares of persons entitled to participate in the distribution under the trust. The instrument was ambulatory in that it contemplated that the names and shares of the distributees to be designated in the future under the provisions of article second, sec. 2, of the deed of trust dated January 15, 1931, were to be subject to change at any time during the lifetime of Jane M. Dravo. The apparent purpose of this section of the deed of trust was to encourage the future efforts of the officers

and employes of the Dravo Corporation, as well as to reward them for past efforts, and this purpose was obviously best served by an ambulatory instrument which left the rights of the distributees subject to change in the future.

When Ralph M. Dravo wrote the letter dated November 24, 1931, to himself and Francis R. Dravo, trustees under deed of trust dated January 15, 1931, for Ralph M. Dravo, he specifically referred to the trust agreement dated January 15, 1931, and said the ". . . following is the list of charities which I desire to share in the distribution as specified in Article 2, Section eight of said Agreement, together with the proportionate share of each charity:— . . .".

Ralph M. Dravo had in mind writing such a letter when he signed the said Deed of Trust on January 15, 1931, and it required this letter to complete the contingent gifts to the charities contemplated in article 2, sec. 8. In view of this fact the letter of November 24, 1931, was really an integral part of the deed of trust dated January 15, 1931.

The fact that a trust may be evidenced by more than one document is recognized in A. L. I. Restatement of the Law of Trusts, §48 of which reads in part as follows:

"A memorandum may be sufficient to satisfy the requirements of the Statute of Frauds, although consisting of several writings.

Comment a: The rule stated in §208 of the Restatement of contracts is applicable to the situation which arises *when a trust is evidenced by several documents*." This section provides:

"Section 208. The memorandum may consist of several writings,

"(a) if each writing is signed by the party to be charged and the writings indicate that they relate to the same transaction . . .". (Italics supplied.)

Similarly, in 1 Bogert, Trusts and Trustees, sec. 90(1), we find the following:

"It sometimes occurs that there are two or more papers signed by the party enabled to create the trust. . . . If each of the two signed papers is incomplete, but one refers to the other, without expressly authenticating or approving the paper referred to, there is authority to the effect that such reference is considered an authentication and the papers may be considered together . . .".

See also Scott on Trusts, sec. 48, and 12 Am. Jur. 782, note 20.

When Ralph M. Dravo wrote the letter dated April 4, 1934, to himself and Louis A. Mertz, trustees under deed of trust dated January 15, 1931, for Ralph M. Dravo, he specifically referred to his ". . . Trust Agreement dated January 15, 1931", and said ". . . the officers and employees who are to participate under Article 2, Sections two, four and eight are the following, with their respective percentages in this participation: . . .". Ralph M. Dravo had in mind writing such a letter when he signed the deed of trust dated January 15, 1931, and it required this letter to complete the gifts to officers and employes of the Dravo Corporation or any of its constituent companies contemplated in article 2, sec. 2, 4 and 8. In view of this fact the letter of April 4, 1934, was likewise an integral part of the deed of trust dated January 15, 1931: Section 48 of A. L. I. Restatement of the Law of Trusts, supra.

We have found no cases in Pennsylvania where a court has been required to determine whether two papers, referring to a single trust fund, executed on different dates, may be construed as a single deed of trust within the meaning of the Act of April 26, 1855, P. L. 328, heretofore cited. However, the Pennsylvania courts have had occasion to pass on the validity of an improperly attested will, followed by a properly at-

tested codicil. In Kelly's Estate (1912), 236 Pa. 54, a will to charity was executed without the required two attesting witnesses. A year later the testator executed a codicil to the defective will; the codicil was witnessed by two attesting witnesses. The court held that the codicil brought the will into conformity with the requirements of the Act of 1855, saying at page 55:

"The only attestation to the execution of this will is in connection with the codicil thereto. The will proper is signed by the testator, but there are no subscribing witnesses to the signing. To the execution of the codicil, made a year or more subsequent, there are two attesting witnesses. It follows that without the codicil the will would be invalid as to the several charitable bequests therein contained. The will and codicil being in contemplation of law, one testamentary act, the attestation of the latter is the attestation of the former, and saves the former from the operation of the statute which otherwise would defeat it, providing the attesting witnesses to the codicil are without interest in the will."

In view of the ambulatory nature of the deed of trust of Ralph M. Dravo, dated January 15, 1931, the analogy of the will and codicil in Kelly's Estate is persuasive.

The signature of Ralph M. Dravo to the letter dated April 4, 1934, was witnessed by two disinterested, subscribing witnesses, each of whom testified to seeing Ralph M. Dravo sign this letter on April 4, 1934. Since this letter was an integral part of the deed of trust dated January 15, 1931, it may properly be said that the deed of trust was properly witnessed by two disinterested, subscribing witnesses, and that, accordingly, the requirements of the Act of April 26, 1855, P. L. 328, as amended by the Act of June 7, 1911, P. L. 702, 10 PS §12, were complied with and that the gifts to charities contained in the deed of trust were valid.

In view of the foregoing it is not necessary to pass on the effect of the will of Ralph M. Dravo on the deed of trust nor on the application of the cy pres doctrine to this estate.