## Stalnaker Estate

*Thomas M. Thistle, Jr.*, for accountant.

*Frank A. Bedford, III*, for Marian Lee Morgan Perrone.

*Lawrence Barth*, for Commonwealth.

ADJUDICATION BY BRUNO, J., SEPTEMBER 22, 1981:

Bernard D. Stalnaker died on February 7th, 1980, leaving a will dated December 3rd, 1973 and a codicil thereto dated November 25th, 1977, of which he appointed D'Arcy D. Amburn executrix to whom letters testamentary were granted on March 14th, 1980. Proof of the advertisement of the grant of the letters was submitted and is annexed.

By his will testator gave his entire estate to his daughter, D'Arcy Dean Darlington (now D'Arcy D. Amburn). His codicil provides in relevant part as follows:

I, Bernard D. Stalnaker, 238 South 21st Street, Philadelphia, Pennsylvania, herewith request that the sum of thirty thousand dollars ($30,000.00) be reapportioned from my estate, established in my latest will and left to Marian Lee Morgan Perrone, daughter of Mrs. Wayne Enyeart of Lantana, Florida. The above amount is to be given to Marian Lee Morgan Perrone without any equivocation and uncontestable by either of my two daughters or any other person or persons.

\* \* \*

The amount of $30,000.00 *is to be paid from* insurance monies from Aetna Life & Casualty Company of Hartford, Connecticut . . .

The decedent was divorced from his wife prior to his death. He was survived by his two daughters, D'Arcy D. Amburn and Lora Jo Dickhart. Marian Lee Morgan Perrone was decedent's niece. * * *

One problem remains. Marian Lee Morgan Perrone appeared at the audit seeking $30,000 as her legacy under the codicil. The accountant has refused to recognize her entitlement to the legacy. The facts surrounding the controversy are not in dispute and can be briefly summarized.

As stated above, the decedent in his will gave his entire estate to his daughter, D'Arcy D. Amburn. By a codicil to that will the decedent directed that $30,000 "be apportioned" from his estate and given to Marian Lee Morgan Perrone. He further directed that the $30,000 "be paid from insurance monies from Aetna Life & Casualty Company."

At the time the decedent executed the codicil he had three policies in effect with Aetna. Policy No. N2966195 was a life insurance policy in the face amount of $100,000 which was issued on October 16th, 1977, and which named D'Arcy D. Amburn and Laura Jo Dickhart the beneficiaries. Policy No. N2951806 was a life insurance policy, the amount thereof and the beneficiaries thereof unknown. Pay Guard Plus Policy No. PXP0004748 was a disability insurance policy which contained surrender value benefits which were payable to the decedent's estate.

At the time of the decedent's death on February 7th, 1980, only Policies No. N2966195 and No. PXP0004748 were in effect. Policy No. N2951806 was surrendered for cash in 1978.

None of the policies in effect at the time of his death were found among the decedent's personal belongings. The decedent's daughters filed a proof of claim statement, together with an affidavit of lost policy form, and collected the proceeds in the sum of $100,526.03 under Policy No. N2966195 from Aetna Life and Casualty Company. The estate received the sum of $183.33 under the Pay Guard Plus policy.

The account filed by the executrix shows a balance of principal after disbursements of $16,718.58. There are three claims totalling $11,103.23, which have been admitted by the

accountant and have not been paid. In addition, the claims of Mr. O'Keefe and Dr. Walker remain to be paid.* There is, therefore, very little available in the estate for distribution.

Nonetheless, Marian Lee Morgan Perrone claims that she is entitled to the full $30,000 legacy. She argues that the accountant, having been directed in the codicil to pay the legacy to her from the insurance policies, must pay the $30,000 legacy from the proceeds of the life insurance policy of which she and her sister were beneficiaries.

The accountant opposes her claim. She submits that Perrone is, at the very most, entitled to $183.33, the proceeds of the Pay Guard Plus policy.

The auditing judge is of the opinion that D'Arcy Amburn must be put to an election. She must elect either to accept the benefits under her father's will, or elect to retain the benefits of the insurance policy. However, she cannot have the full benefits of the will and the insurance policy.

This compelled choice is known as an election in equity. *Bispham's Principles of Equity*, Section 296, (9th ed. 1919), defines it as

> . . . a choice which party is compelled to make between the acceptance of a benefit under a written instrument, and the retention of some property already his own, which is attemped to be disposed of in favor of a third party by virtue of the same paper.

The doctrine has been recognized in the Commonwealth at least since the decision in *Stump v. Findlay*, 2 Rawle 168 (1828). That case gives the classic illustration of the factual situation from which the election in equity arises. It reads as follows:

> If the testator devise the estate of Titius to another, and give Titius a legacy, Titius shall not hold the estate, and claim the legacy; he shall not take a benefit under the instrument, without suffering the whole of it to take effect. And it is immaterial, whether the testator believed he had a right to dispose of the estate, or intended to assume an arbitrary power. If Titius will avail himself of his bounty, he shall not disappoint his will. 2 Rawle at 174.

The necessity for an election also arises in instances like the present where a testator makes the beneficiary of his life insurance policy a legatee or devisee under his will and, by

---

* Editors' Note: Claims of Mr. O'Keefe and Dr. Walker totaling $2,361 were allowed.

that will, attempts to dispose of the proceeds of the policy in favor of a third party. In such instances, the beneficiary must elect to take under the will or to take under the policy: 5 Bowe-Parker; *Page on Wills,* Section 47.10.

If the beneficiary-legatee elects to take under the will, he must give effect to all of the provisions of the will and pay over the proceeds of the insurance policy to the third party. If the beneficiary-legatee elects to take under the insurance policy, he must compensate the third party for his disappointment, using the legacy as the source of the compensation: *Cooley v. Huston,* 229 Pa. 495.

In the instant case, if D'Arcy Amburn elects to take under her father's will she must confirm the entire will and pay Marian Perrone the full $30,000 from her share of the insurance proceeds. None of the burden of payment would fall upon her sister, the co-beneficiary of the life insurance policy, since the sister is not a legatee under the will.

If D'Arcy Amburn elects to take under the policy and renounce her interest under the will then her gift under the will becomes the source from which Marian Perrone is to be compensated. If there are sufficient funds in D'Arcy Amburn's testamentary gift to compensate Marian Perrone to the full extent of the $30,000 any surplus after compensation is restored to D'Arcy Amburn. See *Bispham's Principles of Equity,* Section 296, p. 499, n. 1, (9th ed. 1919). However, if the funds in D'Arcy Amburn's testamentary gift are not sufficient to fully compensate Marian Perrone, then Marian Perrone must bear that loss. She cannot make D'Arcy Amburn relinquish both her legacy under the will and the greater part of the insurance proceeds.

As of the date of the hearing in this matter, D'Arcy Amburn had not made an election. However, it is the opinion of this court that she must be put to an election. The election should be made within a reasonable time and with a full and complete knowledge of her rights. As was said by the Supreme Court in *Zimmerman, v. Lebo,* 151 Pa. 345, 349:

> One is entitled to a full opportunity to know the situation, and his rights, before he can be compelled to elect; but he should put himself in a position to make an election within a reasonable time, and when it is made it binds him and all claiming under him.

Accordingly, D'Arcy Amburn must, within ninety days from the date of this adjudication, make her election. If she elects to take under the will she must pay $30,000 to Marian Perrone; if she elects to take under the policy she must distribute the balance of principal shown in the account, after payment of all outstanding claims, to Marian Perrone.

Two small problems remain. First, D'Arcy Amburn challenges the jurisdiction of the Orphans' Court to determine the distribution of the insurance policy. However, that challenge is without merit. This matter is clearly within the jurisdiction of the Orphans' Court. See *Flannery v. Western, and Southern Insurance Company*, 105 Pitts. 129.

Second, D'Arcy Amburn claims that a case of election does not arise because the gifts made in this matter are not made by the same instrument. It is not disputed that the doctrine of election does not arise if the gifts are made by different instruments. *Bispham's Principles of Equity*, Section 303, states:

> If, therefore, a benefit is conferred by deed upon a person whose property the donor afterwards affects to dispose of by will, this is no case of election, because the donee is not called upon to attack and defend, at one breath, the same instrument.

It is true that, in the instant case, the gift to D'Arcy Amburn is made in the will and the attempted disposition of a portion of the insurance policy to Marian Perrone is made in the codicil. Nonetheless, for purposes of distribution, the will and the codicil are one instrument. Therefore, the court finds that the gifts were made by the same instrument. \*\*\*